**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JESSICA SALGADO,               :        CIVIL ACTION
          Plaintiff            :
          v.                   :
KILOLO KIJAKAZI,               :
Acting Commissioner of the     :
Social Security Administration,:
          Defendant            :        NO.  20-6094

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                    August 16, 2021

 Jessica Salgado, ("Plaintiff"), seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the

final decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security

Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has

responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request

for review is denied.

**I.      PROCEDURAL HISTORY**[1]

 On August 5, 2015, Plaintiff applied for DIB, alleging disability beginning August 1, 2015,

because of physical and mental health problems. Pl. Br. at 1.  Her claim was denied, initially, and

administrative law judge Nicholas Foster ("ALJ Foster") held a hearing on December 13, 2017.

R. 70-104.  ALJ Foster, using the sequential evaluation process for disability,[2] rendered an

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Memorandum of Law ("Pl. Br."), Defendant's Response to Plaintiff's Request for Review ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

   1.  If the claimant is working, doing substantial gainful activity, a finding of not
   disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).

unfavorable decision, on December 28, 2017.  Pl. Br. at 1.  Plaintiff filed a request for review, which the Appeals Council granted, on February 21, 2019, remanding the case for a new hearing. *Id.*

Upon remand, administrative law judge Christine McCafferty ("the ALJ") held a hearing, on November 5, 2019; Plaintiff and vocational expert Beth Kelley ("the VE") testified at the hearing.  R. 35-68.  Applying the sequential review process for disability, the ALJ rendered another unfavorable decision, on December 18, 2019.  *Id.* at 12-29.  This time, the Appeals Council declined review, on October 8, 2020.  *Id.* at 1-3.  Next, Plaintiff requested judicial review and the parties have consented to this Magistrate Judge's jurisdiction, pursuant to 28 U.S.C. § 636(c).

## II.   FACTUAL BACKGROUND

A.   <u>Personal History</u>

Plaintiff, born on February 28, 1986, R. 27, was 33 years old when the ALJ rendered her decision.  She lives with her husband and two minor children.  R. 45-46.  Plaintiff completed high school, R. 27, and served in the Army from 2004 to 2013, R. 52-53; she last worked full-time in 2015, as an aircraft mechanic.  R. 53-54.  However, Plaintiff has held part-time jobs after August 5, 2015 and was working at the time of the 2019 administrative hearing.  R. 39, 46.

---

2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).

3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).

4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).

5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

B.     Plaintiff's Testimony

At the November 5, 2019 hearing, Plaintiff testified about her mental and physical impairments.  She identified anxiety as the condition that rendered her disabled.[3]  R. 47.  Plaintiff feels uncomfortable around strangers; the more strangers she comes into contact with, the greater her anxiety.  R. 59.  During a panic attack, Plaintiff experiences chest pain, a numb arm, a sense of wanting to flee people and sometimes she blacks out.  R. 63-64.  These panic attacks occur approximately once every week.[4]  R. 61.  When she suffers a panic attacks, Plaintiff asks her mother-in-law to care for her children while she isolates herself until the attack subsides.  R. 60.  Plaintiff sees a therapist for her anxiety.  Initially, she saw a therapist once every six weeks, but, at the hearing, she was in the process of increasing treatment to one session every two weeks, because her anxiety level had increased.  R. 49.

Plaintiff's left shoulder problem began when she dislocated it while serving in Afghanistan in 2010.  R. 56.  As a result of this injury, she cannot lift heavy objects over her head.  *Id.*  Plaintiff estimated that she could still lift approximately 20 pounds.  R. 57.  Plaintiff underwent hip surgery in August 2017.  R. 55.  Prior to that, her hip would lock up on her and she had pain that radiated down to her knee and shin.  R. 54.  Post-surgery, her hip no longer locks up; although Plaintiff has decreased range of motion, she does not believe her hip precludes all work.[5]  R. 56.

At home, the only household chores Plaintiff performs are washing dishes and folding clothes.  R. 52.  To avoid supermarket shopping, Plaintiff has groceries delivered to her home.  R. 52.

---

[3] In fact, the Army determined in 2013, upon Plaintiff's honorable discharge, that she was 100% disabled, because of anxiety.  R. 58
[4] Plaintiff stated that excessive contact with strangers induces more than one panic attack in a week.  R. 62.
[5] Prior to undergoing hip surgery, Plaintiff had attempted work as an Uber driver.  Reportedly, she left this job, because her hip would lock up on her after prolonged sitting.  R. 55-56.

C.    Vocational Testimony

Before Plaintiff testified, the VE was asked to consider a hypothetical person of Plaintiff's age, education and work experience, who was able to perform light[6] work, occasionally reach with the left upper extremity, perform simple, routine, repetitive tasks, and tolerate no more than occasional contact with supervisors, co-workers and the public.  R. 41.  The VE stated that this individual could not perform any of Plaintiff's past work, because those jobs all required significant contact with the public.  *Id.*  Next, the ALJ supplemented restrictions with no more than occasional postural activities.  R. 42.  The VE responded that this individual still could not perform Plaintiff's past work.  *Id.*  However, the VE opined that they could perform three light, unskilled[7] jobs:  (1) housekeeper-cleaner (500,000 positions); (2) inspector (100,000 positions); and (3) packer (300,000 positions).  R. 42.  The VE confirmed that "occasionally" meant up to one-third of an eight hour workday, or 2.5 hours.  R. 43.  The VE stated that the alternative jobs she had identified had probationary periods where the employee would be required to have more than occasional contact with supervisors and coworkers.  R. 43.

After Plaintiff testified, the VE provided further testimony.  She was asked to consider the same individual as before, but with the added restrictions of no more than occasional pushing, pulling, feeling, fingering, handling and reaching with both hands.  R. 66.  The VE responded that these additional restrictions would eliminate not only the three jobs previously identified but also all other employment.  R. 66.  Finally, the VE testified that employers typically tolerate no more than 10 absences per year and an employee could be off-task no more than 15-20% of the time.

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

R. 66.

### III.     THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.     [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.

2.     [Plaintiff] engaged in substantial gainful activity during the following periods: the fourth quarter of 2017 and the second quarter of 2018 (20 CFR 404.1520(b) and 404.1571 *et seq*).

3.     However, there has been a continuous 12 month period(s) during which [Plaintiff] did not engage in substantial gainful activity.  The remaining findings address the period(s) Plaintiff did not engage in substantial gainful activity.

4.     [Plaintiff] has the following severe impairments:  left shoulder dysfunction, reconstructive surgery of hip, depression and anxiety (20 CFR 404.1520(c)).

5.      [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

6.     After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can occasionally reach with the right upper extremity; can occasionally perform postural activities; and is limited to simple, routine, repetitive tasks with no more than occasional contact with supervisors, coworkers and the public.

7.     [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

8.     [Plaintiff] was born on February 28, 1986 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

9.     [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10.     Transferability of job skills is not material to the
        determination of disability because using Medical-
        Vocational Rules as a framework supports a finding that
        [Plaintiff] is "not disabled," whether or not [she] has
        transferrable job skills (See SSR 82-41 and 20 CFR Part 404,
        Subpart P, Appendix 2).

11.     Through the date last insured, considering [Plaintiff's] age,
        education, work experience, and residual functional
        capacity, there are jobs that exist in significant numbers in
        the national economy that [Plaintiff] can perform (20 CFR
        404.1569, 404.1569(a)).

12.     [Plaintiff] has not been under a disability, as defined in the
        Social Security Act, from August 1, 2015, through the date
        of this decision (20 CFR 404.1520(g)).

R. 14-15, 17, 19 , 27, 29.

## IV.   DISCUSSION

A.   <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's

findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v.*

*Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*,

181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation

omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*,

247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall,

this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are

supported by substantial evidence, even when the court, acting *de novo,* might have reached a

different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986),

*cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.       Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

7

C.      Review of the Administrative Law Judge's Decision

Applying the sequential analysis process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other unskilled, light jobs that exist in the national economy and, hence, was not disabled.  R. 12-29.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by:  (1) failing to afford her a *de novo* hearing; (2) rendering a residual functional capacity ("RFC") assessment that lacked substantial evidence; (3) failing to consider properly Plaintiff's testimony; and (4) failing to sustain the non-disability finding.  Pl. Br. at 12-29.  Plaintiff maintains that she should be found disabled.  *Id.* at 29-30.  The Commissioner denies Plaintiff's assertions, maintaining that the ALJ's decision is supported by substantial evidence.  Resp. at 4-16.  This court finds that the ALJ's non-disability decision is supported by substantial evidence.

1.      The ALJ did Provide Plaintiff a *De Novo*, Fair Hearing

Plaintiff maintains that the ALJ failed to provide her a *de novo* hearing, because, before taking any testimony, the ALJ mentioned that she needed to fix the errors committed by ALJ Foster and expressed her opinion that, after correcting those errors, it was likely that Plaintiff, nevertheless, would still be found not disabled.  Pl. Br. at 13 (citing R. 38).  Plaintiff believes these opening comments rendered her hearing unfair.  *Id.* at 13-14.  This court disagrees.

Although the ALJ's opening comments were inartful and could be construed as betraying a predisposition, the ALJ proceeded to conduct a full and fair hearing.  Plaintiff testified at length about her impairments and how her condition had changed since the 2017 hearing and Plaintiff's attorney questioned the VE both before and after Plaintiff testified.  Although the ALJ did not pose any questions which yielded disability responses, she did not prevent Plaintiff's attorney from posing such questions.  R. 66.  Hence, Plaintiff's remand hearing was certainly fair.  Furthermore,

the ALJ's lengthy written decision reveals that she did review the evidence *de novo* and reached

an independent disability decision.  Therefore, Plaintiff's first assertion of error lacks merit.

2.   The ALJ's RFC Determination was Supported by Substantial Evidence

Plaintiff complains that the ALJ's evaluation of her RFC lacked substantial evidence.  In

particular, Plaintiff asserts that:  (a) the ALJ's RFC determination is inconsistent with the findings

she made when employing the psychiatric review technique ("PRT"); (2) the ALJ failed to find

that some of her physical impairments were severe; and (c) the ALJ failed to provide adequate

weight to the opinions of consultative examiner Dr. Joel Marmar.  Pl. Br. at 18-22.  This court

finds that Plaintiff's arguments lack merit.

Plaintiff notes the ALJ's PRT findings that she has moderate limitation with interacting

with others and only mild limitation in the other three areas:  understanding, remembering and

applying information; concentrating, persisting or maintaining pace; and adapting or managing

herself.  Pl. Br. at 19 (citing R. 17-19).  Citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004),

Plaintiff argues that the ALJ erred in concluding that her PRT findings were consistent with her

RFC determination that Plaintiff was limited to simple, routine, repetitive work.  *Id.*  However,

*Ramirez* is distinguishable, because that case involved a finding that the claimant often[8]

experienced limitation in maintaining concentration, persistence or pace.  *Ramirez*, 372 F.3d at

552.  That was important, because the pace limitation affected Ramirez's ability to perform jobs

with production requirements, which existed for all of the jobs Ramirez's VE had identified.  *Id.*

at 554.  Herein, Plaintiff only has mild limitation in this area of functioning, R. 18, which is a

---

[8] Under the PRT regulations in effect at the time the Ramirez claim was adjudicated, "often" was the third degree of limitation for the areas of mental functioning.  The third level of limitation is called "moderate" under the current regulations.  The second level is "mild."

lesser degree of limitation.  Hence, the holding in *Ramirez* would not require the ALJ to explicitly include the mild pace limitation in the RFC and hypothetical question posed to the VE.

Next, Plaintiff argues that the ALJ erred by failing to find that her obesity, right ankle lateral reconstruction, migraine headaches and right carpal tunnel syndrome were severe impairments.  Pl. Br. at 19-20.  However, Plaintiff admitted that her disabling impairment was anxiety, not physical limitations.  R. 47.  She also failed to provide any testimony that the above-noted physical conditions impaired her ability to work.  Hence, the ALJ was justified to not consider them as possibly disabling.  *See Rutherford*, 399 F.3d at 553, 556.

Plaintiff's final RFC-related argument is that the ALJ should have afforded more weight to Dr. Marmar's opinions that:  (a) Plaintiff could only stand two hours and walk one hour in an eight hour workday, which does not satisfy the requirements for light work; and (b) she could never reach overhead, only occasionally reach in other directions, and occasionally handle, finger, feel, and bilaterally push and pull.  Pl. Br. at 21-22 (citing R. 719-20). [9]  Plaintiff maintains that Dr. Marmar's standing and walking limitations would restrict her to sedentary work, Pl. Br. at 21, and the other opinions are disabling, according to the VE's testimony.  R. 66.

The RFC determination is not a medical opinion and is reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(2).  Therefore, an ALJ need not afford any special significance to a doctor's opinion concerning RFC.  20 C.F.R. § 404.1527(d)(3).  Furthermore, the Third Circuit has held that an ALJ need not have specific medical support for any component of her RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).  Hence, what matters is whether the ALJ's decision to reject some of Dr. Marmar's opinions is supported by substantial evidence.

---

[9] Dr. Marmar's reports are found in Exhibit 5, which is contained in pages 714 to 727 of the administrative record.

The ALJ provided a lengthy explanation for why she would reject many of Dr. Marmar's opinions.  R. 25-26.  First, the ALJ explained that Dr. Marmar's standing and walking limitations were inconsistent with examinations by Plaintiff's doctors, including orthopedists, who indicated that her gait was normal.  R. 26 (citing Ex. 3F, p. 27; Ex. 7F, p. 137, 143; Ex. 8F, p. 7).  Dr. Marmar's standing and walking limitations were also inconsistent with Dr. Marmar's own examination findings that Plaintiff had a normal stance, did not need an assistive device, could get on and off the exam table without assistance, was able to rise from a chair without difficulty, had a negative straight leg test, had no joint deformity, had normal lower extremity strength, had no muscle atrophy and had no sensory deficits.  *Id.* (citing Ex. 5F).  Next, the ALJ explained that Dr. Marmar's disabling opinions concerning Plaintiff's reaching and manipulative limitations were inconsistent with his own examination findings that Plaintiff had normal grip and upper extremity strength, and intact hand and fingering dexterity.  R. 26 (citing Ex. 5F).  Furthermore, Plaintiff's medical records reveal no treatment for either upper extremity.  R. 26.  As noted previously, the substantial evidence requirement is a low bar.  *See Biestek*, 139 S. Ct. at 1154.  The amount of evidence the ALJ relied upon to reject the opinions of Dr. Marmar that Plaintiff relies upon easily meets that low threshold.  Hence, the ALJ's conclusion must be accepted.

### 3.   The ALJ's Evaluation of Plaintiff's Testimony is Supported by Substantial Evidence

Next, Plaintiff argues that the ALJ should have afforded more weight to Plaintiff's testimony about the limiting effects of her impairments.  Pl. Br. at 22-25.  The court finds that this claim lacks merit.

The ALJ decided that Plaintiff's testimony could not be fully credited, because it was inconsistent with the medical evidence and other evidence – including Plaintiff's own work

history[10] – in the record.  R. 22, 27.  The ALJ then recounted, in great detail, the medical and other evidence that would support the RFC determination she made.  R. 22-27.  This included:  evidence about Plaintiff's right hip problem and its correction with successful surgery in 2017, R. 22; her shoulder problem, R. 22-23; the numerous instances medical records showed essentially normal findings, R. 23; the activities of daily living Plaintiff reported, R. 23; her mental health treatment, which has allowed Plaintiff to help raise her two children, work part-time, attend college and graduate successfully.  R. 24-25.  All of this evidence certainly satisfies the substantial evidence standard, which is a low bar.  *See Biestek*, 139 S. Ct. at 1154.  Hence, the ALJ's evaluation of Plaintiff's testimony must be accepted.

### 4.   The ALJ Properly Carried her Step Five Burden

Nect, Plaintiff asserts that the ALJ failed to sustain her burden at step five of the sequential evaluation process ("SEP").  Pl. Br. at 25-29.  In support of her position, Plaintiff argues that the VE's testimony that unskilled work can be performed, even if the claimant can only tolerate occasional contact with supervisors, is inconsistent with certain Social Security Rulings and the VE's own testimony.  Pl. Br. at 26-28.  Plaintiff also argues that the ALJ failed to rule on her objection to make the same point.  *Id.* at 28-29.  This court declines to accept Plaintiff's arguments.

Plaintiff's first argument cites several Social Security Rulings, but the crux of her argument is that Social Security Ruling ("SSR") 85-15 indicates the ALJ erred.  Pl. Br. at 26.  In particular, Plaintiff maintains that, because SSR 85-15 states that the basic mental demands of unskilled work require the ability, on a sustained basis, to understand, carry out and remember simple instructions, respond appropriately to supervision, co-workers and usual work settings, and deal with changes

---

[10] The record revealed that, in the fourth quarter of 2017 and second quarter of 2018, Plaintiff was able to work sufficient hours that her earning constituted substantial gainful activity, R. 14-15; this disqualified her from being found disabled during those periods.  20 C.F.R. § 402.1520(b).  In addition, Plaintiff was working at the time of the administrative hearing.  R. 46.

in a routine work setting, Plaintiff's limitation to only occasional contact with supervisors, means that Plaintiff cannot perform any unskilled work.  Pl. Br. at 26.

This court rejects Plaintiff's argument.  SSR 85-15 lists a collection of activities and aptitudes that an unskilled worker must be able to carry out on a sustained basis.  1985 WL 56857, *4.  The ruling further states that a substantial loss in the ability to perform any of these activities would limit the potential occupational work base.  *Id.*  Additionally, a section of the ruling which Plaintiff omits indicates that, when a claimant has nonexertional impairments that limit the potential occupational base, the use of a vocational expert is helpful.  *Id.* at *3.  In such instances, the vocational expert would be expected to identify specific jobs that the claimant could perform. *Id.*  In this case, the ALJ sought assistance from the VE, who identified three jobs the hypothetical person could perform.  Since the ALJ complied with SSR 85-15's teaching, there is no basis to find error.

The court rejects Plaintiff's next argument, because the VE's testimony upon which Plaintiff relies, does not clearly support her argument.  The VE initially testified that an individual who could only tolerate occasional contact with supervisors, co-workers and the public could perform the three, unskilled jobs she had identified.  R. 41-42.  When Plaintiff's attorney questioned the VE, he elicited testimony that unskilled jobs typically have probationary periods, which vary in length from one day to one month.  R. 43.  During the probationary period, a new employee might have more than occasional contact with supervisors and co-workers, as the new employee learns the job.  R. 43.  Counsel then asked the VE if this meant that a supervisor necessarily required more than occasional access to the new employee.  R. 43-44.  The VE never answered that question, because it seemed to confuse her, as well as the ALJ.  R. 44-45.  After some give and take, the VE testified that, if a supervisor wanted to keep an employee for more that

the precise time the regulation-defined term "occasionally" permits,[11] the work would require more than "occasional" contact with a supervisor.  R. 45.

Substantial evidence supports the ALJ's acceptance of the VE's testimony that the hypothetical individual could perform the three jobs the VE identified.  A reasonable mind could conclude that, since the typical probationary period is short, even if a claimant might have difficulty tolerating more than occasional contact with supervisors for that brief time, she could, thereafter, tolerate up to occasional contact with supervisors and, hence, be able to perform the three unskilled jobs the VE identified.  That is all that the substantial evidence standard requires. *See Biestek*, 139 S. Ct. at 1154 (citation omitted).

Plaintiff also argues that the ALJ erred by failing to address the preceding legal arguments concerning her ability to perform the unskilled jobs the VE identified.  Pl. Br. at 28-29.  Regardless of whether the ALJ erred by this omission, it is harmless, because this court has found that Plaintiff's arguments lack merit.  There is no need to remand for correction of harmless errors.  *See Rutherford*, 399 F.3d at 553, 556.

5.  Plaintiff Cannot be Found Disabled

Plaintiff's last argument is that, based upon the errors identified, she should be found disabled.  Pl. Br. at 29-30.  However, this court has rejected all of her assertions of error and finds that, in all respects, the ALJ's decision is supported by substantial evidence.  Hence, Plaintiff cannot be found disabled.

An implementing Order follows.

---

[11]In her testimony, the VE had already confirmed that, consistent with the Commissioner's regulations and rulings, "occasionally" means up to one-third of the workday.  R. 43.